UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SWEET RENTALS, INC. D/B/A BONE DRY RENTAL

CIVIL ACTION

VERSUS

DYNAMIC GROUP, LLC

NO. 3:22-00572-BAJ-EWD

RULING AND ORDER

This is a breach of contract dispute. In the main demand, Plaintiff Sweet Rentals, Inc. d/b/a Bone Dry Rental ("Bone Dry") seeks unpaid rental fees allegedly owed by Defendant Dynamic Group, LLC ("Dynamic") under a rental agreement for drying equipment. (*See* Doc. 1). In turn, Dynamic filed a Third-Party Complaint against Third-Party Defendants Craft Consulting Unlimited, LLC ("Craft") and Christopher Garrett Hughes, II, the sole member of Craft. (*See* Doc. 8, ¶¶ 1–5). In its Third-Party Complaint, Dynamic, alleges claims against Hughes, both as representative of Craft and in his individual capacity, for his alleged breach of duties as Dynamic's business consultant. (*See id.*, ¶¶ 28–44).

Now before the Court is **Third-Party Defendant Christopher Garrett Hughes II's Motion to Dismiss (Doc. 22)**, which seeks dismissal of Dynamic's third-party demand against Hughes in his individual capacity, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (*See* Doc. 22 at p. 1). Dynamic opposes Hughes' Motion. (Doc. 27). For the reasons stated herein, the Motion will be denied.

I. ALLEGED FACTS

The following allegations are accepted as true for present purposes:

Bone Dry is a company that rents drying equipment. (*See* Doc. 1, ¶ 6). On September 14, 2021, Bone Dry entered into a Rental Agreement with Dynamic to rent out drying equipment that Dynamic would use to perform water remediation and drying work on buildings damaged by Hurricane Ida. (*See id.*; Doc. 3-2).

Craft was hired by Dynamic as a consultant to supervise Dynamic's restoration division in connection with the company's Hurricane Ida projects. (*See* Doc. 8, ¶¶ 3–5). Per Craft's agreement with Dynamic, Craft was expected to manage the division, supervise Dynamic's employees and contractors, enter approved contracts with third parties, and manage the relationships between Dynamic and those third parties. (*See id.*, ¶ 6). As the executive director and sole member of Craft, Hughes was tasked with performing the services. (*See id.*). Hughes directly supervised a Dynamic employee named Stephen Keithly. (*See id.*, ¶ 7).

On August 28, 2021, Keithly, with Hughes's approval, entered into an rental agreement (the "August 2021 Agreement") with Bone Dry for drying equipment that would be used for Dynamic's school restoration projects. (*See id.*, ¶ 8). Under the August 2021 Agreement, Dynamic was to pay a total of $550,000 for two trailers of equipment, with $50,000 to be paid up front. (*See id.*). Pursuant to the August 2021 Agreement, Dynamic maintained the right to cancel the contract for a fee of $10,000 and would not be bound to pay the entire rental amount of $550,000. (*See id.*).

Despite the contractual language, sometime between August 28, 2021, and September 1, 2021, Hughes incorrectly informed Dynamic's CEO, Joshua McCoy, via text messages that "[Bone Dry doesn't] start rental on the equipment until we are

actually using it. If we want to maintain it on standby it's 50k. But no charge other than that unless we put it on a job." (*See id.*, ¶ 11; Doc. 27 at p. 9). Hughes further stated, "For a 50k gamble it's worth keeping and trying to push a few more services." (*See* Doc. 8, ¶ 11). But nothing in the August 2021 Agreement indicates that the $50,000 up front payment was only to maintain the equipment "on standby," or that no additional charge would be due unless the equipment was used. (*See id.*, ¶ 9).

On September 2, 2021, Hughes emailed another employee at Dynamic stating that: "This is [sic] equipment rentals and standby for the storm. We have the trailers ready and will deploy to losses as needed. The 50k is the initial deposit and will go toward the rental invoices." (*See id.*, ¶ 15). Relying on Hughes's statements, Dynamic proceeded to pay the $50,000 on September 7, 2021. (*See id.*, ¶ 16).

On September 8, 2021, Bone Dry delivered one trailer of equipment to a school in Reserve, Louisiana. (*See id.*, ¶ 17). According to Hughes, sometime by September 9, he received approval to do restoration work at additional schools in LaPlace and Garyville. (*See id.*, ¶¶ 18–19). However, Hughes then received notice that Dynamic would not receive the contracts. (*See id.*). Hughes notified CEO McCoy that Dynamic would not receive the contracts for restoration work. (*See id.*, ¶ 19). But he did not notify anyone at Dynamic that the equipment had been delivered. (*See id.*, ¶ 20).

On September 14, 2021, unbeknownst to anyone else at Dynamic, and even though Dynamic had not received the work contracts, Keithly and Hughes nonetheless executed another Rental Agreement (the "September 2021 Agreement") with Bone Dry. (*See id.* 8, ¶ 22). The September 2021 Agreement no longer contained

3

a provision that included the right to cancel the rental. (*See id.*). The delivered equipment was never used and was retrieved around November 2, 2021. (*See id.*, ¶ 24).

On October 28, 2021, Bone Dry delivered an invoice to Dynamic, requesting a payment of $500,000 for the amount due under the September 2021 Agreement. (*See* Doc. 1, ¶ 15). Dynamic made no further payments other than the initial payment of $50,000. (*See id.*, ¶ 16).

## II.     PROCEDURAL BACKGROUND

On August 19, 2022, Bone Dry initiated this action against Dynamic, seeking an alleged balance due of $500,000, plus interest, attorneys' fees and costs under the Agreements. (*See* Doc. 1, ¶ 21). On August 25, 2022, Dynamic filed its Third-Party Complaint against Hughes, as Craft's representative and in his individual capacity, seeking reimbursement of the $50,000 payment paid to Bone Dry on September 7, 2021, attorneys' fees and costs incurred in the litigation, and any amounts for which Dynamic may be held liable to Bone Dry. (*See* Doc. 8, ¶¶ 28–29). Dynamic alleges, *inter alia*, that Hughes materially misrepresented the terms of the August 2021 Agreement. (*See id.*, ¶¶ 33–34).

Now, Hughes has moved to dismiss Dynamic's Third-Party Complaint for failure to state a claim. (Doc. 22). He argues that Dynamic's allegations, taken to be true, fail to establish liability against him in his individual capacity because Louisiana law shields him from personal liability for acts performed on behalf of a limited liability company. (*See* Doc. 22-1 at pp. 3–5).

4

## III. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (*citing Twombly*, 550 U.S. at 556). When conducting its inquiry, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (internal citations omitted).

## IV. DISCUSSION

Hughes argues that Dynamic's personal capacity claims must be dismissed because he "cannot be held personally liable for [Craft's] debt, obligation, or liability." (*See* Doc. 22-1 at pp. 1–2). But a member of a limited liability company may still be held personally liable, however, in narrow circumstances, such as fraud, breach of

5

professional duty, or other negligent or wrongful act. *See* La. R.S. § 12:1320. Dynamic argues that the fraud and negligent or unlawful acts exceptions apply here. (*See* Doc. 27 at p. 11).[1]

Because fraud is not defined in Section 12:1320, the definition of fraud provided in the Louisiana Civil Code governs. *See Korrapati v. Augustino Bros. Constr., LLC*, 19-426 (La. App. 5 Cir. 7/31/20), 302 So. 3d 147, 155. The Louisiana Civil Code defines "fraud" as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art. 1953. "Fraud may also result from silence or inaction." *Id.* A claim of fraud requires a plaintiff to establish: (1) a misrepresentation of material fact, (2) fraudulent intent or intent to deceive, and (3) resultant injury caused by justifiable reliance. *See Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058, 1068 (5th Cir. 1993).

A party alleging fraud or mistake must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* Under Rule 9(b), factual allegations are sufficient to support an inference of fraud if they either (1) identify circumstances that indicate conscious behavior on the part of the defendant or (2) show a defendant's motive to commit fraud. *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994).

---

[1] Dynamic concedes that the breach of professional duty exception does not apply in this matter. (*See* Doc. 27 at p. 11).

Dynamic offers Hughes' acts and communications of August 28, September 2, September 8, and September 14 as examples of misrepresentations of material facts, and the damages owed to Bone Dry as the resultant injury. (*See* Doc. 27 at pp. 4, 7–9). According to Hughes, "those factual details are necessary but by no means sufficient to meet the requirements of Rule 9(b)". (*See* Doc. 29 at p. 3). He argues that Dynamic "neglects to articulate what [he] sought to gain by making those statements, as is required to plead a fraud claim with particularly under Rule 9(b)." (*See* Doc. 22-1 at p. 13). Hughes further asserts that Dynamic failed to allege facts evincing a fraudulent intent or motive as is required under U.S. Court of Appeals for the Fifth Circuit precedent. (*See* Doc. 29 at p. 3). The Court disagrees.

In *Tuchman v. DSC Communications Corp*, the Fifth Circuit explained that "the factual background adequate for an inference of fraudulent intent can be satisfied by…identifying circumstances that indicate conscious behavior on the part of the defendant, though the strength of the circumstantial allegations must be correspondingly greater." 14 F.3d at 1068. Here, Dynamic has met this burden. The facts in Dynamic's Third-Party Complaint, taken as true, indicate conscious behavior on Hughes' part to defraud. Within days of entering into the August 2021 Agreement, Hughes materially misrepresented the terms of the Agreement to CEO McCoy by telling him that Dynamic would not be charged if the equipment was not used. Furthermore, after Hughes knew that the equipment had been delivered but that Dynamic did not have a job, he inexplicably authorized a new Agreement under which Dynamic no longer had the right to cancel the rental. Hughes' misleading statements

about the August 2021 Agreement and his decision to enter into the September 2021 Agreement plausibly establish conscious behavior on his part to mislead and defraud Dynamic.

Hughes maintains that Dynamic fails "to provide any information regarding the 'unfair benefit' it claims Hughes intended to obtain for himself or any details as to his supposed intent to cause loss to Dynamic." (*See* Doc. 22-1 at p. 13). But "if the facts pleaded in a complaint are peculiarly within the opposing party's knowledge, fraud pleadings may be based on information and belief." *Tuchman*, 14 F.3d at 1068. At this stage of the proceedings, whether Hughes had a financial arrangement or inducement to defraud Dynamic is within his knowledge. As the case proceeds, it will be Dynamic's task to discover evidence of the unfair benefit Hughes intended to obtain for himself or details as to his supposed intent to cause loss to Dynamic. But Dynamic, having alleged sufficient facts to state a claim of fraud against Hughes, has successfully alleged that La. R.S. § 12:1320's fraud exception applies, such that Hughes could be held personally liable for Craft's allegedly negligent and fraudulent actions. Dismissal of Dynamic's Third-Party Complaint at this point would be improper.[2]

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that **Third-Party Defendant Christopher Garrett**

---

[2] Having found that Dynamic has plausibly alleged that Hughes engaged in fraud, the Court declines to address Dynamic's alternative argument that Hughes acted negligently or unlawfully. (*See* Doc. 27 at p. 11).

8

Hughes II's Motion to Dismiss (Doc. 22) be and is hereby **DENIED**.

Baton Rouge, Louisiana, this 31ST day of August, 2023

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**